**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PRECISION TRENCHLESS, LLC, | : | |
| ET AL., | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:19-CV-00054 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SAERTEX MULTICOM LP, ET AL., | : | September 22, 2021 |
| Defendants. | : | |

**RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**
**(DOC. NOS. 107, 122, 129)**

## I.    INTRODUCTION

This consolidated action arises out of property damage caused by the failure of a newly installed pipe liner that was supposed to rehabilitate and reinforce an existing sewer pipe in West Hartford, Connecticut.  The parties to this action are: (1) the Metropolitan District Commission ("MDC"), a Connecticut municipality and the owner of the pipe-replacement project; (2) Ludlow Construction Company, Inc. ("Ludlow"), MDC's general contractor; (3) The Charter Oak Fire Insurance Company ("Charter Oak") and Travelers Property Casualty Company of America ("TPCCA") (collectively, "Travelers"), Ludlow's insurers; (4) Precision Trenchless, LLC ("Precision"), Ludlow's subcontractor; and (5) Saertex multiCom LP ("Saertex") and Granite Inliner, LLP ("Granite Inliner"), the manufacturers of the failed liner.  The parties have filed various multi-count complaints and counterclaims against each other.

Pending before the court are: (1) Travelers' Motion for Partial Summary Judgment (Doc. No. 107) as to Count One of its Intervenor Complaint against Precision sounding in failure to indemnify; (2) MDC's Motion for Partial Summary Judgment

Against Ludlow (Doc. No. 122) as to Count Three of its Amended Complaint sounding in failure to indemnify and failure to defend; and (3) MDC's Motion for Partial Summary Judgment Against Precision (Doc. No. 129) as to Count Four of its Amended Complaint sounding in failure to indemnify and failure to defend.  All three Motions are opposed.

For the reasons stated below, Travelers' Motion is granted in part and denied in part; MDC's Motion seeking partial summary judgment against Ludlow is denied; and MDC's Motion seeking partial summary judgment against Precision is granted in part and denied in part.

II.    **BACKGROUND**

A.    Factual Background[1]

1.    The MDC Project and Liner Failure

On September 27, 2016, MDC, a specially chartered Connecticut municipality, hired Ludlow, a Massachusetts construction company, as its general contractor to perform sanitary sewer rehabilitation on certain sewer lines within MDC's system. Roughly one year later, on September 22, 2017, Ludlow subcontracted with Precision, a New York company specializing in the trenchless rehabilitation of pipes, to perform water and sanitary sewer main replacement on MDC's behalf.  Precision installed Type-S Saertex UV-liner with infused resin to replace the existing sewer pipe on May 14, 2018.  Less than five months later, on October 3, 2018, the liner installed by Precision collapsed, resulting in sewer blockages and sewer water backup into nearby homes and yards, causing property damage.

---

[1] Unless otherwise noted, the facts set forth in this section are not in dispute.

MDC demanded indemnification from Ludlow, pursuant to their contract, for its costs stemming from the liner failure and sent Ludlow several invoices for sums expended.  Ludlow requested indemnification from Precision pursuant to the terms of their subcontract.  MDC and Ludlow disagree about whether MDC demanded a defense from Ludlow.  MDC is also in disagreement with Precision about whether MDC demanded indemnification and defense from Precision.

   2. The General Contract

The contract between MDC and Ludlow was executed on September 27, 2016. Contract Number 2013B-11A ("Prime Contract") (Doc. No. 136-2) at 1.  The Prime Contract incorporates by reference the Project Manual, as modified by the likewise incorporated Special Provisions.  Prime Contract at 3-4; see also Project Manual (Doc. Nos. 136-4, 136-5, 136-6); Special Provisions (Doc. Nos. 136-7, 136-8, 136-9).  The Prime Contract also incorporates four addenda.  Id. at 5; see also Contract Addenda (Doc. No. 136-13).  The court refers collectively to the Prime Contract, Project Manual, Special Provisions, and Contract Addenda as "Contract."

Section 6.20 of the Project Manual is an indemnity clause, which provides in relevant part:

> A. To the fullest extent permitted by Laws and Regulations, Contractor [i.e., Ludlow] shall defend, indemnify and hold harmless Owner [i.e., MDC], any municipality included therein, the State of Connecticut, Engineer, and the officers, directors, shareholders, members, partners, employees, agents, consultants and subcontractors of each and any of them (collectively, the "Indemnitees") from and against all claims, costs, losses and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance (or attempted performance) of the Work, including any maintenance or warranty Work and the use, misuse, or failure of any machinery or equipment (including but not

3

limited to scaffolding, ladders, hoists, rigging and supports) whether or not such machinery was furnished, rented, or loaned by the Owner or any other Indemnitee.  This indemnity shall survive the termination or expiration of this Contract and shall cover all matters arising thereunder or in connection therewith, including but not limited to the following:

1. [B]odily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom, sustained or allegedly sustained by any of the Indemnitees, the Indemnitors (as hereinafter defined), the public, any person on or near the Work, or any other person or property, real or personal (including property of Owner); and caused or allegedly caused in whole or in part by any act, omission or negligence of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable (collectively, the "Indemnitors"), regardless of whether or not caused in part by any act, omission or negligence of an individual or entity indemnified hereunder or whether liability is imposed upon such indemnified party by Laws and Regulations regardless of the negligence of any such indemnified party unless caused by the sole negligence of a party indemnified hereunder.  If through the acts, omissions or negligence on the part of Contractor, any other Contractor or any Subcontractor shall suffer loss or damage on the Work, Contractor shall settle with such other Contractor or Subcontractor by agreement or arbitration if such other Contractor or Subcontractor will so settle.  If such other Contractor or Subcontractor shall assert any claim against s [sic] any one or more of the Indemnitees on account of any damage alleged to have been sustained, Owner shall notify Contractor, who shall indemnify, defend and save harmless such Indemnitees against any such claims. . . .

E. If Contractor fails to defend any Indemnitee hereunder, such Indemnitee may defend any suit, action or other legal proceeding and the costs thereof (including, without limitation, attorneys' fees) shall be included as part of the loss, cost, damage and expense covered by the foregoing indemnities of Contractor.

Project Manual, Section 6.20.

3.    The Subcontract

The Subcontract between Ludlow and Precision was executed on September 22, 2017.  Agreement Between Contractor and Subcontractor ("Subcontract") (Doc. No. 143-6) at 6.  MDC is designated as "The Owner" under the Subcontract.  Id. at 1.  Article 10 of the Subcontract sets forth Precision's indemnification and defense obligations as follows:

> To the fullest extent permitted by law, the Subcontractor shall indemnify, and hold harmless, and defend the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, directly or indirectly arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury or destruction of tangible property (other than the Work itself), but only if the claim, damage, loss or expense is caused by, connected with, arising out of or resulting from an act or omission of the Subcontractor, the Subcontractor's subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable.  The Subcontractor shall not be required by this agreement to indemnify a party for that portion of any loss that is directly attributable to the negligence of the party to whom indemnification is owed, except to the extent such indemnification is permitted by law.

Subcontract, Article 10.  The third and fourth paragraphs of Article 10 further expound Precision's duty to defend:

> To the fullest extent permitted by law, the Subcontractor agrees to assume the defense of the Owner, the Contractor, the Architect, the Architect's consultants, and the agents and employees of any of them, in any claim, proceeding, lawsuit, and/or litigation arising out of any accident, incident, or occurrence that is caused by, connected with, arising out of, or resulting from the performance of the Subcontractor's work under this contract.
>
> The subcontractor agrees that the obligation to defend commences when a claim is made against the Owner, Contractor, Architect, Architect's consultants, and/or the agents and employees of any of them, even if the

subcontractor disputes its obligation to indemnify and hold harmless.  The party being defended shall have the right to choose its own counsel.  The subcontractor agrees to pay the defense of the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them, with counsel chosen by the party to be defended, upon demand.

Id.

B.     Procedural Background

1.     Legal Actions and Consolidation

On January 10, 2019, following the failure of the liner, Precision initiated a lawsuit ("Precision Action") against the liner's manufacturers, Saertex and Granite Inliner. Precision Complaint (Doc. No. 1).  The Precision Complaint alleges that the liner collapsed due to "manufacturing errors or defects" and that the sewer back-up and consequent property damage were therefore a direct result of Saertex's and Granite Inliner's negligence.  Id. ¶¶ 30-33.

On April 24, 2019, Ludlow filed suit against Precision ("Ludlow Action").  Ludlow Construction Co., Inc. v. Precision Trenchless, LLC, Case No. 3:19-CV-00606 (JCH) (D. Conn.), Ludlow Complaint (Doc. No. 1).  The Ludlow Action was consolidated into the Precision Action on September 11, 2019.  Notice of Consolidation (Doc. No. 51).

On December 13, 2019, Charter Oak and TPCCA filed, in the Precision Action, an Intervenor Complaint against Precision as subrogees of Ludlow.  See Intervenor Compl. (Doc. No. 67).  Charter Oak and TPCCA are subsidiaries of The Travelers Indemnity Company, a Connecticut insurance company specializing in commercial and personal property casualty insurance.  Id. ¶¶ 5-6.

On January 15, 2020, MDC filed a lawsuit against both Ludlow and Precision ("MDC Action").  Metropolitan District Commission v. Ludlow Construction Co., Inc. et

al., Case No. 3:20-CV-00072 (JCH) (D. Conn.), MDC Complaint (Doc. No. 1).  The
MDC Action was consolidated into the Precision Action on February 4, 2020.  Notice of
Consolidation (Doc. No. 83).  MDC filed an Amended Complaint against Ludlow and
Precision on March 20, 2020.  MDC Amended Compl. (Doc. No. 92).

       2.      Ruling on Ludlow's Motion for Partial Summary Judgment

On November 14, 2019, Ludlow moved for partial summary judgment as to
liability on, as relevant here, Count One of its Complaint.  Ludlow's Motion for Partial
Summary Judgment (Doc. No. 55).  Count One of Ludlow's Complaint alleged that
Precision had agreed to indemnify Ludlow pursuant to Article 10 of the Subcontract; that
Ludlow had suffered damages as a result of the liner's failure; and that Precision had
refused Ludlow's tenders and requests for indemnification.  Ludlow Construction Co.,
Inc. v. Precision Trenchless, LLC, Case No. 3:19-CV-00606 (JCH) (D. Conn.), Ludlow
Complaint ¶¶ 22-26 (Doc. No. 1).

The court granted Ludlow's Motion as to Count One, concluding that "[t]he
undisputed facts demonstrate that the damages incurred by Ludlow 'arise out of or
result from performance of Precision's Work under [the] Subcontract.'"  Ruling (Doc. No.
89) at 6 (brackets omitted) (quoting Subcontract, Article 10).  This conclusion followed
from the express terms of the Subcontract, which defined Precision's "Work" to include
both the installation of the liner and the liner itself.  Ruling at 7, 10.  Thus, claims against
Ludlow "involving the failure of the liner—whether caused by product defect or
installation error—[were] clearly" sufficient to trigger Precision's duty of indemnification
under the Subcontract.  Id. at 7.

Precision's principal argument to the contrary was based on a misreading of the
Subcontract.  Attempting to quote the Subcontract, Precision argued that it was only

obligated to indemnify Ludlow for a "claim, damage, loss or expense [that] is caused by, connected with, arising out of or resulting from an act or omission of the Subcontractor's subcontractors [sic], anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable."  Precision's Opposition to Ludlow's Motion for Partial Summary Judgment (Doc. No. 71) at 10 (quoting Subcontract, Article 10).  Thus, the argument went, because Saertex was a supplier and not Precision's subcontractor, Precision would have no duty to indemnify Ludlow if the cause of the collapse was a defective liner.  Id. at 10-12; see also Ruling at 8.

However, as the court made clear in its Ruling, the language of the Subcontract "is not limited to 'act or omission of the Subcontractor's subcontractors' as Precision states."  Ruling at 8.  Rather, the Subcontract imposes upon Precision a duty to indemnify Ludlow against claims arising out of "an act or omission of the <u>Subcontractor</u>, the Subcontractor's subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable."  Id. at 8-9 (emphasis in original) (quoting Subcontract, Article 10).  The court therefore concluded that "the majority of Precision's analysis on this issue . . . [was] not relevant."  Ruling at 9.

3.     Ruling on Precision's Motion for Reconsideration

On March 25, 2020, Precision moved this court to reconsider or clarify its Ruling granting Ludlow's Motion for Partial Summary Judgment.  Motion for Reconsideration (Doc. No. 96).  Specifically, Precision requested that the court "clarify that Precision is only obligated to indemnify Ludlow for the damages and claims at issue in this consolidation [sic] action to the extent they do not arise out of Ludlow's own negligence."  Id. at 1.  The court denied Precision's Motion, explaining that the court's holding that "Precision agreed to indemnify Ludlow for the damages and claims at issue

8

here" did not "imply[ ] that the claims 'at issue here' involved claims asserting Ludlow's negligence."  Ruling on Precision's Motion for Reconsideration ("Reconsideration Ruling") (Doc. No. 99).

4.     The Instant Motions for Partial Summary Judgment

Now before the court are three Motions for Partial Summary Judgment. Travelers moves for summary judgment as to Count One of its Intervenor Complaint against Precision sounding in failure to indemnify.  Travelers' Motion for Summary Judgment (Doc. No. 107); <u>see also</u> Travelers' Memorandum of Law in Support ("Travelers' Mem. in Supp.") (Doc. No. 107-1).  MDC moves for summary judgement as to Count Three of its Amended Complaint, sounding in failure to indemnify and failure to defend against Ludlow.  MDC's Motion for Partial Summary Judgment Against Ludlow (Doc. No. 122)[2]; <u>see also</u> MDC's Memorandum of Law in Support ("MDC's Mem. in Supp. (Ludlow)") (Doc. No. 122-1).  MDC also moves for summary judgement as to Count Four of its Amended Complaint, sounding in failure to indemnify and failure to defend against Precision.  MDC's Motion for Partial Summary Judgment Against Precision (Doc. No. 129); <u>see also</u> MDC's Memorandum of Law in Support ("MDC's Mem. in Supp. (Precision)") (Doc. No. 129-1).  All three Motions are opposed.  <u>See</u> Precision's Opposition to Travelers' Motion for Summary Judgment ("Precision's Opp. (Travelers)") (Doc. No. 118); Ludlow's Opposition to MDC's Motion for Partial Summary

---

[2] MDC's Motion states that it seeks summary judgment against Ludlow as to Count Three of its Complaint.  Motion at 1.  Count Three of MDC's original Complaint, however, is a claim against Precision. <u>Metropolitan District Commission v. Ludlow Construction Co., Inc. et al.</u>, Case No. 3:20-CV-00072 (JCH) (D. Conn.), MDC Complaint (Doc. No. 1) at 7.  The court therefore construes MDC's Motion as seeking summary judgment on Count Three of its Amended Complaint.

Judgment ("Ludlow's Opp.") (Doc. No. 136); Precision's Opposition to MDC's Motion for

Partial Summary Judgment ("Precision's Opp. (MDC)") (Doc. No. 142). [3]

## III.   LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party

can establish that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64,

71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party

must set forth specific facts demonstrating that there is indeed "a genuine issue for

trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir.

2016).  Unsupported allegations do not create a material issue of fact and cannot

overcome a properly supported motion for summary judgment.  See Weinstock v.

Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine

whether there are disputed issues of material fact, the trial court must "resolve all

ambiguities and draw all inferences in favor of the party against whom summary

judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir.

1995).

"[A] motion for summary judgment may be granted in a contract dispute only

when the contractual language on which the moving party's case rests is found to be

---

[3] Unless otherwise noted, the court's citations refer to these and other documents' original
pagination.

wholly unambiguous and to convey a definite meaning." Topps Co., Inc. v. Cadbury
Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008).  Under Connecticut law, "a contract is
ambiguous if the intent of the parties is not clear and certain from the language of the
contract itself. . . .  Accordingly, any ambiguity in a contract must emanate from the
language used in the contract rather than from one party's subjective perception of the
terms." Valente v. Securitas Security Servs., USA, 152 Conn. App. 196, 209 (2014);
see also Cruz v. Visual Perceptions, LLC, 311 Conn. 93, 101 (2014) ("When the
language of a contract is ambiguous, the determination of the parties' intent is a
question of fact.  Where there is definitive contract language, however[,] the
determination of what the parties intended by their contractual commitments is a
question of law." (citation and brackets omitted)).

## IV.    DISCUSSION

### A.    Travelers' Motion for Partial Summary Judgment Against Precision (Doc. No. 107)

Travelers seeks summary judgment as to Count One of the Intervenor
Complaint, which alleges that Precision failed to indemnify Ludlow pursuant to the
Subcontract.  See Travelers' Motion for Summary Judgment at 1; Intervenor Compl. ¶¶
1-32.

As noted above, Travelers brings this action against Precision as Ludlow's
subrogee.  Intervenor Compl. ¶ 25.  "Subrogation actions are often brought by insurers
. . . .  In this context, subrogation is the right of the insurer to be put in the position of its
insured so that it may pursue recovery from third parties who are legally responsible to
the insured for a loss paid by the insurer." Albany Ins. Co. v. United Alarm Servs., Inc.,
194 F. Supp. 2d 87, 93 (D. Conn. 2002).  "The general rule is that an insurer's right to

11

subrogation attaches, by operation of law, on paying an insured's loss."  Gibbs v.

Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992).  "At that time, the insurer is

subrogated in a corresponding amount to the insured's right of action against any other

person responsible for the loss, and the insurer succeeds to all the procedural rights

and remedies possessed by the insured."  Id.

At this point, it bears remembering that Travelers is comprised of two separate

entities—Charter Oak and TPCCA.[4]  See Intervenor Compl. ¶ 5; see also Corporate

Disclosure Statement (Doc. No. 82) (stating that Charter Oak and TPCCA are

subsidiaries—plural—of The Travelers Indemnity Company).  The Intervenor Complaint

alleges that, during the relevant period, Ludlow was insured under a Commercial

General Liability Policy issued by Charter Oak and a Commercial Excess Liability

(Umbrella) Policy issued by TPCCA.  Intervenor Compl. ¶ 22.  There is no dispute that

Charter Oak paid Ludlow a total of $319,109.41 under the Commercial General Liability

Policy on Ludlow's claim for damages sustained due to the liner failure.  See Travelers'

Mem. in Supp. at 6; Precision's Motion for Permission to Supplement Opposition

("Precision's Supplemental Opposition") (Doc. No. 197) at 6, 8 (acknowledging that

Charter Oak "ultimately paid" Ludlow $319,109.41 on its claim for reimbursement); see

also Travelers' Supplemental Reply to Precision's Supplemental Opposition (Doc. No.

224) at 2.  However, Travelers has come forward with no evidence that TPCCA made

any payments to Ludlow under the Commercial Excess Liability (Umbrella) Policy.

---

[4] Curiously, Travelers consistently obscures this fact throughout its papers by designating
"Travelers" as the shorthand reference for Charter Oak, forgoing a shorthand reference for TPCCA, but
then also designating "Travelers" as the shorthand for referring to Charter Oak and TPCCA collectively.
See, e.g., Travelers' Mem. in Supp. at 3.

Indeed, Precision maintains that TPCCA "has no right to assert a claim in this action because it did not pay anything under the excess policy", Precision's Supplemental Opposition at 6, a position supported by the deposition testimony of Joey Celis, a Construction Claim Professional employed by Travelers.  <u>See</u> Partial Transcript of Joey Celis Deposition (Doc. No. 197-1) at 60:7-61:5 (stating that "[e]verything is under the primary [insurance policy]" and that "no payment was made under the excess [policy]"); <u>see also</u> Affidavit of Joey Celis ¶ 3 (Doc. No. 107-6).  Further, it is evident that the $319,109.41 paid to Ludlow would not have exhausted the $2,000,000 coverage limit of the Commercial General Liability Policy issued by Charter Oak.  <u>See</u> Travelers Policy Declarations (Doc. No. 107-7) (indicating a $2,000,000 general aggregate limit).  Thus, on the record before it, the court concludes that only Charter Oak is subrogated to the rights of Ludlow in this action.

As to those rights, the court has already determined that, pursuant to their Subcontract, Precision owes Ludlow a duty of indemnification against claims, damages, losses, and expenses arising out of or resulting from performance of Precision's Work under the Subcontract.  Ruling at 5-10; Reconsideration Ruling at 3-4.  The court concludes that Precision likewise owes this duty to Charter Oak, who, as subrogee, stands in Ludlow's shoes.[5]  Travelers' Motion for Partial Summary Judgment as to liability on Count One is granted as to Charter Oak.  The Motion is denied as to TPCCA

---

[5] The court struggles to understand why Travelers spends roughly 16 pages, <u>see</u> Travelers Mem. in Supp. at 3-18, marshaling virtually the same arguments set forth by Ludlow in its Motion for Partial Summary Judgment, <u>see</u> Ludlow's Memorandum of Law in Support of Partial Summary Judgment (Doc. No. 55-1) at 10-16, on an issue the court has already decided in Ludlow's favor and upheld on reconsideration.  Ruling at 5-10; Reconsideration Ruling at 1-4.  Further, the court notes that Precision—inexplicably—continues to misquote the language of the Subcontract in precisely the same fashion explicitly discussed by the court in its prior Ruling.  Precision's Opposition at 4-6.

without prejudice to renew should TPCCA pay out to Ludlow under the Commercial Excess Liability (Umbrella) Policy on claims arising out of the liner failure.

The court further concludes that summary judgment as to damages would be premature at this time.  Precision previously submitted to this court that it was not in possession of the facts necessary to assess and/or dispute, inter alia, the reasonableness of the amounts paid out Charter Oak pursuant to Ludlow's claims. Precision's Local Rule 56(a)2 Statement of Facts in Opposition (Travelers) ¶¶ 9-13 (Doc. No. 118-11).  Subsequently, Precision requested leave to supplement its Opposition based on additional evidence it had obtained in the intervening time.  See Precision's Supplemental Opposition at 2, 5-8.

The court concludes that there are material issues of fact as to the damages owed by Precision to Charter Oak (and Ludlow, if any) pursuant to Precision's indemnity obligations.  Therefore, Travelers' Motion for Partial Summary Judgement is granted in part as to Charter Oak with respect to liability, as Precision owes a duty to Charter Oak. However, the Motion is denied as to the award of damages and as to TPCCA's claim for duty to indemnify.

      B.    <u>MDC's Motion for Partial Summary Judgment Against Ludlow (Doc. No. 122)</u>

          1.    Failure to Indemnify

In Count Three of its Amended Complaint, MDC alleges that Ludlow agreed to indemnify MDC against all losses and damages arising out of Ludlow's performance of "the Work" under the Contract; that the liner installed by Ludlow's subcontractor failed and subjected MDC to various damages and expenses, including the cost of remediating the damages to affected homeowners' properties; and that Ludlow has

14

failed to substantively respond to MDC's demands for indemnification.  MDC Amended

Compl. ¶¶ 19-23 & p. 5.[6]

As relevant here, Section 6.20 of the Contract's Project Manual provides:

A. To the fullest extent permitted by Laws and Regulations, Contractor [i.e., Ludlow] shall defend, indemnify and hold harmless Owner [i.e., MDC], any municipality included therein, the State of Connecticut, Engineer, and the officers, directors, shareholders, members, partners, employees, agents, consultants and subcontractors of each and any of them (collectively, the "Indemnitees") from and against all claims, costs, losses and damages (including but not limited to all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance (or attempted performance) of the Work, including any maintenance or warranty Work and the use, misuse, or failure of any machinery or equipment (including but not limited to scaffolding, ladders, hoists, rigging and supports) whether or not such machinery was furnished, rented, or loaned by the Owner or any other Indemnitee.  This indemnity shall survive the termination or expiration of this Contract and shall cover all matters arising thereunder or in connection therewith, including but not limited to the following:

Project Manual, Section 6.20.  MDC argues that it is entitled to summary judgment

because the installation of the liner and its subsequent failure are unambiguously

covered by "the Work" as it is used in this provision.  MDC's Mem. in Supp. (Ludlow) at

3-4, 8-12.  It is undisputed that MDC has requested indemnification from Ludlow for the

damages MDC has incurred due to the liner's failure.  See Ludlow's Local Rule 56(a)2

Statement of Facts in Opposition ¶¶ 17-18 ("Ludlow's SOF") (Doc. No. 136-1).  Ludlow

has not provided indemnification, but rather forwarded MDC's demands for

---

[6] MDC's 12-page Amended Complaint contains twelve paragraphs numbered "1", eleven paragraphs numbered "27", nine paragraphs numbered "28", eight paragraphs numbered "29", five paragraphs numbered "30", three paragraphs numbered "31", and two paragraphs numbered "32."  As one might imagine, there arises great difficulty in citing to a complaint so numbered.

In the future, the court would be greatly aided by a complaint that takes a more sensible approach to numbering paragraphs.

indemnification to Precision.  Ludlow's Opp. at 2-3; <u>see also</u> Ludlow's SOF, Additional Material Facts ¶ 14.

Ludlow argues that summary judgment as to Count Three must be denied for four reasons.  First, Ludlow argues that Section 6.20 is ambiguous because the Contract contains multiple, differing definitions of "the Work" and that it is unclear to which definition Section 6.20 refers.  <u>See</u> Ludlow's Opp. at 1, 3, 7-11.  Second, Ludlow argues that Section 6.20 is unenforceable because it violates section 52-572k(a) of Connecticut General Statutes, which voids any provision in a construction contract that indemnifies a promisee against the promisee's own negligence.  <u>See</u> Ludlow's Opp. at 1, 11-15.  Third, Ludlow argues that summary judgment should not enter because there are disputed issues of material fact as to whether, and the extent to which, the liner failure was the result of MDC's own negligence.  <u>See</u> <u>id.</u> at 1, 15-17.  Finally, Ludlow argues that it owes no duty to defend MDC because no action is filed against MDC and MDC never demanded a defense. <u>See</u> <u>id.</u> at 1-2, 17-19.  The court considers each in turn.

a.   <u>Definition of "the Work"</u>

MDC contends that "the Work", as used in Section 6.20, is defined in Section 02766A of the Contract.  MDC's Mem. in Supp. (Ludlow) at 4.  This provision, which is an attachment to Addendum No. 2 to the Contract, states that:

> The Work specified in this Section includes furnishing all labor, supervision, equipment, appliances and materials and performing all operations including cleaning; removal and disposal of debris; bypass pumping; pre- and postconstruction television inspection (NASSCO PACP standards); performing sample testing; lining existing sanitary sewer lines; installing end seals; reconnecting active building connections; removing protruding taps by remote methods; stopping active leaks that might interfere with the

16

integrity of the liner to be installed; providing water; complete and accepted, in accordance with the contract documents[.]

Section 02766A.[7]  Because this definition includes "lining existing sanitary sewer lines", MDC argues that there is no dispute that MDC has sustained damages arising out of Ludlow's "Work."  MDC's Mem. in Supp. (Ludlow) at 9-12.

Ludlow argues in response that the Contract contains multiple, differing definitions of "the Work" and that it is unclear to which definition the indemnity provision refers.  Ludlow's Opp. at 8-11.

The court agrees.  There is, to begin with, the definition in Section 02776A.  In addition, the Project Manual's "Standard General Conditions" contains a definitional section that defines "Work" as:

> The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents.

Project Manual, Section 1.01(51).[8]  One could read this to be the applicable definition for purposes of the indemnity provision, which is, itself, found in the Standard General Conditions at Section 6.20.

Arguably the best reading of the Contract is that "the Work" as used in Section 6.20 is defined in Section 01010 of the Special Provisions.  The first page of the Prime Contract executed by MDC and Ludlow states: "[Ludlow] shall perform the Work as

---

[7] See Contract Addenda (Doc. No. 136-13) at 21 (ECF pagination).

[8] See Project Manual (Doc. No. 136-4) at 170.

17

specified or indicated in the Contract Documents.  <u>The Work is as described in</u>

<u>SECTION 01010</u>."  Prime Contract at 1 (emphasis added).  The Prime Contract goes on

to state that the "Contract Documents" include "the Project Manual as modified by the

Special Provisions."  Prime Contract at 3-4.  Both the Project Manual and the Special

Provisions contain a Section 01010 entitled "Summary of Work."  Project Manual (Doc.

No. 136-4) at 5, 273-74; Special Provisions (Doc. No. 136-7) at 3; Special Provisions

(Doc. No. 136-9) at 182-190.  Section 01010 of the Project Manual, however, is merely

a generic document that is explicitly "replace[d]" by Section 01010 of the Special

Provisions, <u>see</u> Special Provisions (Doc. No. 136-7) at 3, which delineates the location,

scope, and proposed sequence of "the Work."  Because the Prime Contract is a master

document that incorporates the Project Manual, Special Provisions, and Contract

Addenda, its statement that "[t]he Work is as described in Section 01010" could be read

as making Section 01010 the controlling definition of "the Work" for purposes of the

indemnity provision in Section 6.20.  <u>See, e.g.</u>, <u>Ney v. Open Sols., Inc.</u>, No. 06-CV-

4354, 2007 WL 3377239, at *9 (E.D. Pa. Nov. 8, 2007) (observing that it is reasonable

to construe "the main or master document" as controlling an inconsistent provision that

it incorporates); <u>see also</u> Special Provisions (Doc. No. 136-7) at 3 (stating that the

Special Provisions "supersede any conflicting provisions of this Contract").

        The court, however, finds there is no need to decide which of these three

definitions of "the Work" is controlling for purposes of Section 6.20, for the undisputed

facts demonstrate that the damages incurred by MDC "aris[e] out of or relat[e] to the

performance . . . of the Work", <u>see</u> Section 6.20, regardless of which definition of "the

Work" applies.

All three provisions define "the Work" to include furnishing "all" labor and materials necessary to perform the sanitary sewer rehabilitation, which necessarily includes the liner.  See Section 02766A ("The Work specified in this Section includes furnishing all labor . . . and materials."); Section 1.01(51) ("Work includes . . . providing all labor . . . and furnishing . . . all materials."); Section 01010 (stating that the scope of "Work" includes "[f]urnish[ing] all labor[ and] materials . . . required").  Moreover, all three provisions define "the Work" to include installation of the liner.  Section 02766A states that "[t]he Work" includes "performing all operations including . . . lining existing sanitary sewer lines."  Section 02766A.  Section 1.01(51) similarly states that "Work includes . . . installing[ ] and incorporating all materials and equipment into" "[t]he entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents."  Section 1.01(51).  Finally, Section 01010 defines "Work" to include "perform[ing] the Work in its entirety as shown on the Contract Drawings and as specified herein."  Section 01010 (emphases added).[9]  Section 01010 goes on to specify that the Work entails "rehabilitat[ing]" various stretches of sewer on Linbrook Road and Montclair Drive by installing "cured in place lining."  See Special Provisions (Doc. No. 136-9) at 183-89.  In sum, Section 02766A, Section 1.01(51), and Section 01010 all define "the Work" to include installation of the liner and the liner itself.  "[T]he Work", as used in Section 6.20, therefore includes the liner and the installation of the liner no matter which of these three provisions controls.

---

[9] The court succeeded only in locating in the record a list of the Contract Drawings, see Special Provisions (Doc. No. 136-9) at 127, and was unable to locate the Drawings themselves.

b.      "Arising Out Of"

Section 6.20 requires Ludlow to indemnify MDC against all claims, costs, losses, and damages "arising out of or relating to . . . the Work."  Section 6.20.  "The term 'arising out of' is construed broadly under Connecticut law."  Hermitage Ins. Co. v. Sportsmen's Athletic Club, 578 F. Supp. 2d 399, 404 (D. Conn. 2008). To demonstrate that an accident "arises out of" an event, "it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to" the particular event. Bd. of Educ. v. St. Paul Fire & Marine, 261 Conn. 37, 48 (2002) (internal quotation marks omitted); see also Henderson v. Bismark Constr. Co., No. CV-176062488S, 2019 WL 3546481, at *2-4 (Conn. Super. Ct. July 10, 2019).  "Connecticut courts have similarly understood the term 'relating to' to have a 'broad meaning.'" Williams v. MESA Underwriters Specialty Ins. Co., No. 3:19-CV-01772 (KAD), 2021 WL 1839906, at *8 (D. Conn. May 8, 2021); see also Brennan v. Brennan Assocs., 293 Conn. 60, 79 n. 12 (2009) (collecting cases construing the phrase "relating to" broadly); Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (describing "relating to" as "broader in scope than the term 'arising out of.'")).

It is undisputed that MDC has incurred costs remediating property damage caused by the liner failure. These expenditures are clearly related to, and arise out of, the liner and the installation of the liner.  Because Section 02766A, Section 1.01(51), and Section 01010 all encompass the liner and the installation thereof, the ambiguity as to which provision defines "the Work" in Section 6.20 does not preclude summary judgment.

c.      Section 52-572k

Section 52-572k provides in relevant part:

> Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void . . . .

Conn. Gen. Stat. Ann. § 52-572k(a).[10]  "The purpose of the statute is to nullify any provision in 'construction contracts' which grants immunity to either party for acts of negligence.  Where negligence is concerned a party cannot by contract relieve itself of such liability."  Costin v. Bhandari Constructors & Consultants, Inc., 285 F. Supp. 2d 165, 169 (D. Conn. 2003) (quoting Guild v. Exxon Corp., 81 F.Supp.2d 377, 380-81 (D.Conn.1999)).

Ludlow argues that Section 6.20 violates section 52-572k(a).  See Ludlow's Opp. at 11-15.  The court agrees.

Subparagraph (A)(1) of Section 6.20, which MDC fails to quote in its Memorandum, see MDC's Mem. in Supp. (Ludlow) at 3-4, delineates the scope of indemnity outlined in the paragraph (A), supra, and provides that Ludlow's duty of indemnity extends to:

> 1. Bodily injury, sickness, disease or death or to injury to or destruction of tangible property . . . caused or allegedly caused in whole or in part by any act, omission or negligence of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable (collectively, the "Indemnitors"), regardless of whether or not caused in part

---

[10] In 2001, the Connecticut State Legislature amended the statute by substituting the word "negligence" for the words "sole negligence" and thereby broadened its reach.  See Parker v. Konover Constr. Corp., No. CV990090911S, 2003 WL 21675349, at *6 n.1 (Conn. Sup. Ct. June 24, 2003).

> by any act, omission or negligence of an individual or entity indemnified
> hereunder or whether liability is imposed upon such indemnified party by
> Laws and Regulations regardless of the negligence of any such indemnified
> party unless caused by the sole negligence of a party indemnified
> hereunder.

Project Manual, Section 6.20 (brackets omitted) (emphases added).  Plainly, this provision seeks to indemnify MDC against personal injury or property damage "caused in part by", inter alia, MDC's own negligence.  In so doing, it runs afoul of Section 52-572k(a). Cf. Henderson v. Bismark Constr. Co., Inc., No. FBTCV176062488S, 2019 WL 3546481, at *4-5 (Conn. Sup. Ct. July 10, 2019) (concluding that indemnity provision in construction contract violated section 52-572k where that provision only "expressly exclude[d] any liability for bodily injury or property damage arising from the sole negligence of the Indemnified Parties, their employees or agents").

The court does not, however, agree with Ludlow's contention that Section 6.20 is void in its entirety as a result.  See Ludlow's Opp. at 14 ("[T]he entire provision is void."). Ludlow supports its view by likening this case to Patt v. Metro. Dist. Comm'n, No. X04CV044003558S, 2006 WL 3878083 (Conn. Super. Ct. Dec. 20, 2006).  Ludlow's Opp. at 14.  In Patt, MDC contracted with a construction company ("Company") to perform maintenance work at a waste processing facility managed by MDC.  Patt, 2006 WL 3878083, at *1.  The plaintiff, an employee of the Company, had been seriously injured while working at the facility.  Id.  He subsequently sued MDC, claiming that his injuries were caused by MDC's negligence.  Id.  MDC filed a counterclaim against the Company (which had intervened to recover workers' compensation payments to the plaintiff) seeking indemnification under the parties' contract, which contained a clause requiring the Company to indemnify MDC "on account of any and all claims, damages,

[and] losses . . . arising out of injuries . . . caused in whole or in part by the acts or omissions of [the Company] . . . while engaged in the performance of this Contract." Id.

The court (Beach, J.) held that section 52-572k "bar[red] application of the indemnity clause in the circumstances presented." Patt, 2006 WL 3878083, at *3 (emphasis added). Key to this holding was that the plaintiff's suit against MDC sounded in negligence. Id. The court reasoned that MDC would suffer losses arising out of the work under the contract only if the plaintiff succeeded on his claim and obtained a damages award from MDC. See id. Put another way, MDC would have no losses for the Company to indemnify unless it was found to have been negligent. Id. ("In the indemnification context, the agreement will be triggered only if [MDC] is found to be liable to [the plaintiff], that is, where the underlying case sounds in negligence, only where negligence of [MDC] is a substantial factor in causing injury to [the plaintiff]." (emphasis added)). Thus, section 52-572k barred application of the indemnity provision because, were there to be damages to indemnify MDC against, those damages would necessarily have been the result of MDC's negligence. Id.

Patt is clearly distinguishable from the case at hand. Here, MDC disclaims indemnification for its own negligence. See MDC Reply (Doc. No. 148) at 5-7. Thus, unlike in Patt, application of the indemnity provision here would not entail Ludlow indemnifying MDC against the latter's own negligence.

Ludlow also emphasizes language from Henderson, in which the Connecticut Superior Court concluded that "Section 52-572k bars any duty to indemnify by [the subcontractor-indemnitor]" in that case. Henderson, 2019 WL 3546481, at *5; see also Ludlow's Opp. at 14-15. Viewed in context, however, this language is less absolute

than it first appears.  In <u>Henderson</u>, the court supported its conclusion with reference to several Superior Court cases interpreting section 52-572k.  <u>Henderson</u>, 2019 WL 3546481, at *5.  The court explicitly noted that these cases had held the statute to "bar[ ] any obligation by a subcontractor to indemnify a contractor <u>for any of that contractor's negligence</u>."  <u>Id.</u> (emphasis added).  Moreover, the court later clarified its conclusion by stating that section 52-572k "would bar any indemnification by [the subcontractor-indemnitor] <u>for any negligence by [the contractor-indemnitee]</u>."  <u>Id.</u> (emphasis added). In any event, this court reads the indemnity discussion in <u>Henderson</u> as dicta, as "the only issue" in <u>Henderson</u> was "whether [the subcontractor] owe[d] [the contractor] a duty to defend under [the indemnity provision]."  <u>Id.</u> at *2.  The question of whether section 52-572k barred the subcontractor's duty to indemnify was neither at issue nor necessary to the decision in <u>Henderson</u>.  <u>Id.</u> at *5 ("What is at issue here is the duty to defend, which is separate from the duty to indemnify.").

This court has previously made clear that section 52-572 does not require courts to cast aside an entire indemnity provision merely because a single clause contained therein offends the statute.  <u>See</u> <u>Costin v. Bhandari Constructors & Consultants, Inc.</u>, 285 F. Supp. 2d 165, 170 (D. Conn. 2003) ("[T]he court concludes that, to the extent this indemnification clause purports to indemnify [the indemnitee] for liability resulting [from] its own negligence, it is void.  However, those indemnity provisions in the contract that seek simply to hold [the indemnitor] liable for its own acts and omissions are valid under the statute.").

Two considerations make that approach particularly appropriate here.  First, Section 6.20 is introduced by a savings clause that limits Ludlow's indemnity obligation

24

"[t]o the fullest extent permitted by Laws and Regulations."  Section 6.20.  This language weighs in favor of excising only the offending clause of the indemnity provision.  See Sheehan v. Mod. Cont'l/Healy, 62 Mass. App. Ct. 937, 937 & n.2 (2005) ("The indemnity provision does not fail as a whole, because the offending portion may be excised. . . .  The indemnity agreement contains a 'savings' clause limiting its scope '[t]o the fullest extent permitted by law.'  This language permits its enforcement to the extent permitted by [the anti-indemnity statute].").

Second, and more important, the Contract between MDC and Ludlow contains a severability clause.  That provision states: "If any term or provisions of this Contract shall be found to be illegal or unenforceable then such term or provision shall be deemed stricken and the remaining portions of this Contract shall remain in full force and effect."  Project Manual (Doc. No. 136-4) at 224, Section 17.10.  Section 17.10 clearly reflects the parties' intention to preserve, where possible, those terms of the Contract that are in accordance with the law.  Here, severance is possible because, absent the offending clause, Section 6.20 still expressly obligates Ludlow to indemnify MDC against damages "caused or allegedly caused in whole or in part by any act, omission or negligence of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable."  Section 6.20(A)(1).  Thus, the Contract's severability clause counsels strongly in favor of preserving those portions of Section 6.20 that do not require Ludlow to indemnify MDC against the latter's own negligence.  See Handler Corp. v. State Drywall Co., No. CIV.A. 05C-06-012MMJ, 2007 WL 3112466, at *3 (Del. Super. Ct. Sept. 27, 2007) (concluding that "there is no need to

nullify the remainder of the [i]ndemnification [provision]" that was not in violation of the state's anti-indemnity statute because "[t]he Agreement contains a severability clause"), aff'd, 956 A.2d 31 (Del. 2008); see also Int'l Paper Co. v. Corporex Constructors, Inc., 96 N.C. App. 312, 316 (1989) ("By striking the offending language the Court does not rewrite the contract or substitute its own terms in the provision for those of the parties. We merely sever the portion that is void as against public policy from an otherwise valid indemnity provision."). Cf. Kempski v. Toll Bros., 582 F. Supp. 2d 636, 643 (D. Del. 2008) ("When written as TBI suggests, the provision still requires DHAC to indemnify TBI for all claims, damages, losses and expenses which in any way arose from the performance, existence or conditions of the work, which includes causes of action arising out of TBI's negligence. As a result, removing that language directed to TBI's negligence does not alleviate the problem under [the anti-indemnity statute], and the indemnity obligation still violates the statute and, therefore, is void and unenforceable." (emphases in original)).

The court concludes that section 52-572k bars only that portion of Section 6.20 that requires Ludlow to indemnify MDC against MDC's own negligence.

### d.    Cause of the Liner Failure

Ludlow also contends that summary judgment should not enter because the extent to which the liner failure might have been caused by MDC's negligence has not yet been established. Ludlow's Opp. at 15-17. However, it is sufficient that Ludlow agreed to indemnify MDC against all losses and damages arising out of Ludlow's performance of "the Work" under the Contract, which, as discussed above, encompasses the cost of remediating property damage cause by the liner failure.

The court grants MDC's Motion as to Count Three, in part, to the extent that MDC's damages were not caused by MDC's own negligence.  Given that MDC did not move for summary judgment on the ground that there is no evidence it was negligent, that issue cannot be reached, and remains an issue of fact for trial.

        2.      Failure to Defend

MDC also argues that it is entitled to summary judgment as to liability on the failure to defend claim against Ludlow in Count Three of its Amended Complaint. MDC's Mem. in Supp. (Ludlow) at 1.  The problem for MDC is that it has alleged no such claim in Count Three.  <u>See</u> MDC Amended Compl. ¶¶ 1-26 & p. 5.  Count Three of the Amended Complaint reproduces those portions of Section 6.20 that articulate Ludlow's duty to defend and permit MDC to provide for its own defense and seek reimbursement should Ludlow fail in its duty to defend.  MDC Amended Compl. at p. 5. Nowhere in the Amended Complaint, however, does MDC allege that Ludlow has refused or failed to defend MDC.

Similarly, MDC's Motion argues that Ludlow is <u>obligated</u> to assume MDC's defense.  MDC's Mem. in Supp. (Ludlow) at 12-13.  However, neither the Motion nor MDC's Local Rule 56(a)1 Statement of Facts contends that Ludlow has <u>breached</u> that duty by refusing or failing to defend MDC.  <u>See</u> MDC's Mem. in Supp. (Ludlow) at 12-13; MDC's Local Rule 56(a)1 Statement of Facts (Ludlow) ¶¶ 1-19 (Doc. No. 122-2).

Indeed, having reviewed the Amended Complaint carefully, the court notes that MDC failed to allege the existence of any claims or actions against MDC requiring a

defense.[11]   The Amended Complaint alleges only that MDC "has been exposed to liability from <u>potential claims</u> arising from the [liner failure]."  MDC Amended Compl. ¶ 21 (emphasis added).

Notice of a suit or claim is necessary to trigger the duty to defend.  <u>See</u> <u>City of W. Haven v. Liberty Mut. Ins. Co.</u>, 639 F. Supp. 1012, 1018 (D. Conn. 1986) ("Liberty Mutual became obligated to defend West Haven <u>upon receipt</u> of West Haven's notice [that workmen's compensation claims had been brought against the city]." (emphasis added)); <u>see also</u> <u>Misiti, LLC v. Travelers Prop. Cas. Co. of Am.</u>, 308 Conn. 146, 156 (2013) ("[T]he duty to defend is triggered whenever a complaint [against the insured] alleges facts that potentially could fall within the scope of coverage.").  Here, MDC fails to allege in its Amended Complaint the existence of an action or claim against MDC, much less that Ludlow had notice of such a claim.

In its Memorandum in Support, MDC asserts, for the first time, the existence of a claim against it arising out of the liner failure: namely, the counterclaim against MDC filed by Precision in this very action.  <u>See</u> MDC's Mem. in Supp. (Ludlow) at 6, 8; MDC Reply at 9.[12]   However, "a memorandum in support of a motion for summary judgment is not the proper place to present new claims which, in effect, amend the complaint." <u>Coppola v. Connecticut Student Loan Found.</u>, No. CIV. A. N-87-398JAC, 1989 WL 47419, at *3 n. 14 (D. Conn. Mar. 22, 1989); <u>see also</u> <u>Mosby v. Bd. of Educ. City of Norwalk</u>, 754 F. App'x 34, 37 (2d Cir. 2018) (summary order) (finding that the district

---

[11] The Amended Complaint alleges MDC demanded <u>indemnification</u>, not a defense, from Ludlow. <u>See</u> MDC Amended Compl. at ¶¶ 22-23.  This allegation does not assert that any suits or claims against MDC exist.

[12] MDC also acknowledges Ludlow's counterclaim filed in this action. <u>See</u> MDC's Mem. in Supp. (Ludlow) at 6

court properly refused to entertain arguments plaintiff first raised in briefing in opposition to a motion for summary judgment).  MDC failed, in its Amended Complaint, to allege that any claims or suits had been filed against it.  The belated assertions in MDC's Memorandum cannot fix this error, and this court cannot hold Ludlow liable for failing to defend claims or suits that MDC has not alleged.

Moreover, Precision filed its counterclaim against MDC on April 20, 2020, one month <u>after</u> MDC filed its Amended Complaint on March 20, 2020.  Precision's Answer to MDC's Amended Compl. (Doc. No. 105).[13]  MDC points to no authority to support the proposition that a claim for breach of contract can accrue before a breach occurs.  <u>See Tolbert v. Connecticut Gen. Life Ins. Co.</u>, 257 Conn. 118, 124 (2001) ("The law concerning when a breach of contract action accrues is well settled.  This court has stated that [i]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted."(internal quotation marks omitted)).  Because MDC's March Amended Complaint preceded Precision's April counterclaim, a claim for breach on the basis of a failure to defend that counterclaim could not have accrued at the time the Amended Complaint was filed.  Thus, MDC could not have pled that Ludlow breached its duty to defend on the basis of Precision's counterclaim.

In sum, the court cannot grant summary judgment on a claim not pled.  MDC's Motion as to breach of duty to defend is therefore denied.

---

[13] Ludlow's April 10, 2020 claim, too, was filed after MDC filed its March 20, 2020 Amended Complaint. Ludlow's Answer to MDC's Amended Compl. (Doc. No. 102).

C.    <u>MDC's Motion for Partial Summary Judgment Against Precision (Doc. No. 129)</u>

MDC also seeks summary judgment against Precision as to Count Four of its Amended Complaint sounding in failure to indemnify and failure to defend.

1.    Failure to Indemnify

As to failure to indemnify, this claim likewise suffers from a basic pleading failure. Namely, despite bringing an action against Precision for failing to indemnify MDC pursuant to the Subcontract between Precision and Ludlow, MDC fails to allege that Precision refused or failed to provide indemnity. <u>See</u> MDC Amended Compl. ¶¶ 1-26 & p. 6.  While the Amended Complaint alleges that Ludlow failed to indemnify MDC against damages arising out of the liner failure, <u>see id.</u> ¶¶ 21-23, it makes no such allegation with respect to Precision.

To be held liable for a breach of the duty to indemnify, a party must have notice of the underlying claim.  <u>See, e.g.</u>, <u>Town of Fairfield v. D'Addario</u>, 149 Conn. 358, 362 (Conn. 1962) (holding that "the giving of reasonable notice was a condition precedent to [the contractor's] duty to defend and indemnify" although the contract contained no specific language requiring notice).  Count Four of MDC's Amended Complaint, however, contains no allegation that Precision was aware of or failed to provide indemnity for any claims.  <u>See</u> MDC Amended Compl. ¶¶ 1-26 & p. 6.

MDC attempts to address the pleading deficiency in its Memorandum and Local Rule 56(a)1 Statement by asserting that Precision failed to respond to MDC's requests for indemnification for damages, expenses, and fees arising from the liner collapse, made in a letter dated April 24, 2020.  MDC's Local Rule 56(a)1 Statement of Facts (Precision) ¶ 18 (Doc. No. 129-2); <u>see also</u> MDC's Mem. in Supp. (Precision) at 5.  The

letter relied upon by MDC, however, is addressed not to Precision, but to "Excess Claims Reporting, Great Divide Insurance Company", and states only that "MDC is entitled to defense and indemnification <u>as an additional insured under your Excess Liability insurance policy</u>" "purchased by Precision."[14]  MDC Letter Dated April 24, 2020 (Doc. No. 129-8) at 4 (emphasis added).[15]  MDC does not provide evidence showing how or whether Precision itself had notice of the claim.  Nor does MDC explain how Precision's failure to respond to a letter sent to Precision's purported insurer, rather than Precision, and requesting indemnity as an additional insured under Precision's insurance policy, rather than pursuant to the Subcontract, constitutes a refusal by Precision to fulfil an indemnity obligation under the Subcontract.

 Absent any evidence, let alone any allegation, that Precision has failed or refused to indemnify MDC pursuant to the terms of the Subcontract, MDC is not entitled to summary judgment on its claim against Precision sounding in failure to indemnify.  Thus, MDC's Motion as to breach of duty to indemnify is denied.

   2.  Failure to Defend

MDC also argues that it is entitled to summary judgment as to liability on the failure to defend claim in Count Four of its Amended Complaint.  Here again, the Amended Complaint fails to allege any claims or other proceedings against MDC arising out of the liner failure and makes no allegation that Precision has failed or refused to defend MDC.  MDC Amended Compl. ¶¶ 1-26 & p. 6.  These are prerequisites for succeeding in an action for breach of contract sounding in failure to defend.  <u>See</u> <u>West</u>

---

[14] MDC also demanded defense and indemnification in a second April 24, 2020 letter addressed to the underlying policy insurer, Allied World Assurance Company. MDC Letter Dated April 24, 2020 at 6.

[15] The court's citation here refers to the document's ECF pagination.

Haven, 639 F. Supp. at 1018 (indicating that notice of an action and failure to provide a defense are necessary "element[s]" of a breach of contract claim for failure to defend).

As above, MDC attempts to cure its failure to allege a claim or action triggering Precision's duty to defend by relying on the counterclaim against MDC filed by Ludlow in this action.  MDC's Mem. in Supp. (Precision) at 9.  However, as with the counterclaim filed by Precision, Ludlow's counterclaim was filed well after the filing of the Amended Complaint, and MDC fails to make any argument that would support holding Precision liable for a breach of contract that, at the time the Amended Complaint was filed, had not yet occurred.  See Tolbert, 257 Conn. at 124.

MDC's Motion against Precision as to breach of duty to indemnify is denied.

## V.    CONCLUSION

For the foregoing reasons:

Travelers' Motion for Partial Summary Judgment Against Precision (Doc. No. 107) is granted in part and denied in part.  Travelers' Motion is granted as to liability on Count One as to The Charter Oak Fire Insurance Company only.  Travelers' Motion is denied as to the Travelers Property Casualty Company of America without prejudice to renew.  As to damages, the court concludes that additional briefing would be useful in determining the damages owed by Precision to Charter Oak (and Ludlow, if any) pursuant to Precision's indemnity obligations.  The court orders that Precision submit supplemental briefing on the issue of damages within 21 days of this Ruling.  Charter Oak and Ludlow are given 14 days from the date of Precision's submission to respond.

MDC's Motion for Partial Summary Judgment Against Ludlow (Doc. No. 122) is granted in part and denied in part.  As to the claim against Ludlow sounding in failure to indemnify, the Motion is granted to the extent that MDC's damages were not caused by

MDC's own negligence.  Insofar as the Motion seeks summary judgment for failure to defend, the Motion is denied.

MDC's Motion for Partial Summary Judgment Against Precision (Doc. No. 129) is denied in its entirety.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of September 2021.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge